# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SUSAN M. TOMAS,

      Plaintiff,

      v.

THE STATE OF ILLINOIS
DEPARTMENT OF EMPLOYMENT
SECURITY; JAMES JOHNSON; DIANN
WARE; LIOUBOV VOITYNA aka
"LUBA"; AMERICAN FEDERATION OF
STATE, COUNTY and MUNICIPAL
EMPLOYEES (AFSCME) LOCAL 1006;
PATRICIA OUSLEY; RUDELEY
HERRON; and MARK FISHER,

      Defendants.

Nos. 07 C 4542, 07 C 6274, 08 C 610
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The Plaintiff, a former employee of the Illinois Department of Employment Security ("IDES"), has brought this discrimination and retaliation suit pro se against her former employer and three of her former supervisors alleging that they denied her proper training and demoted her on the basis of her race and national origin. Plaintiff has also sued her union and three of its individual officials, asserting discrimination and retaliation for allegedly failing to represent her in the underlying grievance against her employer. Each set of defendants has filed a motion to dismiss.

## I. BACKGROUND

Plaintiff Susan M. Tomas, formerly an Employment Services Program Representative for the Illinois Department of Employment Security, filed claims for declaratory judgment, injunctive relief, and compensatory damages against her former employer, IDES; three of her

IDES supervisors, James Johnson, Diann Ware, and Lioubov Voityna; her union, the American Federation of State, County and Municipal Employees ("AFSCME") Local 1006; and three officials of AFSCME Local 1006, President Patricia Ousley, Chief Steward Rudeley Herron, and Vice President Mark Fisher. Tomas alleges violations of her rights arising out of discrimination against her on the basis of her race (Caucasian) and national origin (Polish) and retaliation.

In January 2006, Tomas filed a charge of discrimination ("First Charge of Discrimination") with the Equal Employment Opportunity Commission ("EEOC") against IDES, claiming race discrimination when her supervisor issued a written discipline against her that was not issued against a similarly situated non-white coworker. In June 2006, Tomas filed a second charge of discrimination against IDES ("Second Charge of Discrimination"), claiming that her employer was discriminating against her based on her Polish national origin and was retaliating against her for having filed the First Charge of Discrimination. Subsequently, in December 2006, Tomas filed a third charge of discrimination with the EEOC ("Third Charge of Discrimination"), this time against her union, AFSCME Local 1006. This Third Charge alleged that the union was discriminating against Tomas on the basis of her Polish national origin by failing to adequately represent her in her ongoing grievances against IDES and also for retaliation.

Tomas filed timely complaints upon receiving each Notice of Suit Rights from the EEOC for each of the three Charges of Discrimination. In December 2007, Plaintiff filed a consolidated complaint against IDES and its above-named employees arising out of the First and Second Charges of Discrimination (the "Consolidated IDES Complaint"). In January 2008, Plaintiff filed a Complaint of Employment Discrimination against AFSCME Local 1006 and its above-

named officials (the "AFSCME Complaint") arising out of the Third Charge of Discrimination. The AFSCME Complaint, originally filed before Judge Bucklo, was transferred here in April, 2008.

The Consolidated IDES Complaint contains six counts. Counts I, II, and III allege discrimination, hostile work environment, and retaliation against IDES based upon race and/or national origin in violation of Title VII Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Count IV alleges First Amendment retaliation by Johnson, Ware, and Voityna. Counts V and VI allege retaliation in violation of Illinois' State Officials and Employees Ethics Act, 5 ILCS 430/15-10 (2008), and intentional infliction of emotional distress against IDES, Johnson, Ware, and Voityna. Plaintiff's pro se AFSCME Complaint alleges national origin discrimination, race discrimination, as well as a retaliation claim against AFSCME Local 1006, Ousley, Herron, and Fisher in violation of Title VII and 42 U.S.C. §§ 1981 and 1983.

Subsequent to Plaintiff's initial complaints against IDES, but prior to Plaintiff filing the Consolidated IDES Complaint, IDES filed a 12(b)(1) and 12(b)(6) motion to dismiss arguing that: (1) Plaintiff has failed to satisfy the conditions precedent for bringing national origin discrimination, hostile work environment, and retaliation claims under Title VII;[1] (2) Plaintiff's demand for punitive damages under Title VII should be stricken;[2] (3) the Eleventh Amendment

---

[1] Tomas' national origin discrimination, hostile work environment, and retaliation claims brought under Title VII arise out of charges of discrimination contemplated in the Second Charge of Discrimination. IDES argues that Tomas did not satisfy the conditions precedent to bring such claims because she did not indicate that she received a right-to-sue letter pursuant to the Second Charge of Discrimination. Tomas cured this deficiency by pleading in the Consolidated IDES Complaint that she did receive such notification in a September 14, 2007, right-to-sue letter. Consolidated IDES Complaint at ¶ 21. Accordingly, this argument is moot.

[2] This argument, made prior to Plaintiff filing the Consolidated IDES Complaint, is moot, as Tomas no longer seeks punitive damages from IDES.

immunizes IDES, a state agency, from liability under §§ 1981 and 1983;[3] and (4) Plaintiff fails to state a claim of intentional infliction of emotional distress ("IIED") because the conduct that she alleges caused her emotional distress was not extreme and outrageous. Defendants AFSCME Local 1006, Ousley, Herron, and Fisher filed a 12(b)(1) and 12(b)(6) motion to dismiss, arguing that: (1) there is no individual liability under Title VII; (2) the race discrimination claim is outside the scope of her EEOC charge; (3) this court lacks of subject matter jurisdiction over the Title VII claims preceding February 7, 2006; (4) the court lacks of subject matter jurisdiction over the §§ 1981 and 1983 claims preceding January 28, 2006; (5) the individual union defendants are immune from damage claims brought for acts taken on behalf of the union; and (6) the Title VII, § 1981, and § 1983 claims fail to state claims upon which relief can be granted. Because of the overlapping facts and intertwined legal issues, I address both motions here. For the following reasons, both motions are granted in part and denied in part.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to file a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037 (7th Cir. 1998). Defendants' motions to dismiss should be granted only if Tomas can prove any set of facts in support of her claim that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Tomas' "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

---

[3] Tomas' claims against IDES in counts I, II, and III of the Consolidated IDES Complaint assert violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., but do not assert violations of 42 U.S.C. § 1981 or 42 U.S.C. § 1983. Accordingly, IDES's argument that the state agency is immune from § 1981 and § 1983 liability under the Eleventh Amendment is moot.

4

complaint are true (even if doubtful in fact)."  *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955,

1965 (2007) (citations omitted).

## III. FACTS

I draw the facts below from Plaintiff's allegations in her two complaints, as updated and

clarified by Plaintiff's September 9, 2008, deposition.  I must accept Plaintiff's alleged facts as

true for purposes of ruling on Defendants' motions.

Pro se plaintiff Susan M. Tomas is a Caucasian woman of Polish descent.  Defendants

Johnson and Ware are both African Americans and were Tomas' supervisors during the relevant

periods.  Defendant Voityna is a Caucasian of Ukrainian national origin.  Defendant Ousley is the

President of AFSCME Local 1006, defendant Herron is the local union's Chief Steward, and

defendant Fisher is the local union's Vice President.  Each of the individual AFSCME

defendants is African American.

Tomas began her employment with IDES on approximately August 15, 2001, as a

Program Representative working with Polish and Russian language claimants seeking

unemployment benefits.  During her first two years with IDES, Tomas accepted and checked

applications, receiving more menial assignments and appreciably less training than her other

coworkers.  For instance, IDES hired defendant Lioubov "Luba" Voityna on the same date as

Tomas.  Voityna received significant training throughout the department, learned how to process

more advanced claimant applications (called "section 80 applications"), and was promoted to

Service Representative.  In this capacity, Voityna became one of Tomas' supervisors.  Tomas, on

the other hand, was forced to train herself to process applications while simultaneously

completing her other tasks. Tomas alleges that her supervisors intentionally denied her training in an effort to prove her incompetent.

The animosity between Tomas and her supervisors developed as a consequence of Tomas' handling of the claim of a Polish claimant, Mr. Keeta. Tomas believed that defendant Ware instructed the denial of Keeta's benefits because he was handicapped, Polish, and not an African American. Tomas alleges that Johnson masterminded the denial of Keeta's application. When Tomas attempted to correct the situation, Tomas alleges that her supervisors covered up the discrepancy in Keeta's benefits. Tomas then went around her supervisors to file an appeal on Keeta's behalf. Tomas alleges that Johnson tried to interfere with the investigation of the appeal and, according to Tomas, Johnson proceeded to abuse her mentally and discriminate against her through threats and mental abuse. She asserts that, on several occasions, Johnson called her into his office to "interrogate" her. Furthermore, Tomas reports that Johnson repeatedly shouted at her, shook his finger at her, issued contradictory orders, and threatened her. Johnson's recriminations were so severe that Tomas felt as though she would have a nervous breakdown.

Tomas tried to secure a transfer to another IDES office throughout this period, but she alleges that defendant Ousley denied her assistance in doing so. Tomas asserts that she was denied the opportunity to transfer based on her race and national origin, while IDES employees of other races and national origins were freely able to transfer within the agency.

Ousley and Johnson are longstanding friends who have known one another for over twenty years. Tomas alleges that on numerous occasions, Ousley refused to believe Tomas' allegations of discrimination and abuse against Johnson. Together, according to Tomas, Johnson and Ousley intentionally covered up IDES' discriminatory actions against Tomas.

On May 1, 2005, Tomas' supervisor, defendant Diann Ware, issued a written discipline against Tomas because Tomas failed to complete the five section 80 applications assigned to her per day. Tomas alleges that inadequate training and her other duties precluded her from processing the applications. Around this same time, Johnson's hostility towards Tomas became so severe that, in one instance, Tomas was taken to the hospital in need of immediate medical treatment for chest pains. Tomas, believing that racial discrimination motivated Ware's disciplinary action, filed her First Charge of Discrimination against IDES on January 5, 2006. Although this was the first incident that gave rise to a charge of discrimination, Tomas perceived racial discrimination earlier during her time at IDES. However, the EEOC interviewers did not include those allegations in the EEOC complaint.

Following Tomas' January 2006 charge of discrimination, Tomas alleges that IDES supervisors paid extra attention to Polish-speaking employees as a front to undermine Tomas' discrimination claims. To this perceived end, Danuta Lech, another Polish IDES employee who was hired well after Tomas, was promoted to Service Representative ahead of Tomas. Tomas claims that this promotion was a "showcase" by her supervisors, intended to demonstrate that IDES was not discriminating against persons of Polish ancestry.

Shortly thereafter, in March 2006, Tomas was promoted to Service Representative. Tomas alleges that she received improper training for this position as well. Whereas the standard training period is four months, Voityna trained Tomas for only three weeks. Tomas found this abbreviated training to be substandard not only in form but also in substance, as it consisted of Voityna abusively yelling at Tomas rather than instructing her on claims adjudication. Additionally, Voityna wanted Tomas to sign a statement indicating that Tomas had been trained

to perform the new position. Tomas refused, which apparently angered Voityna. Tomas claims that she was demoted to her original position of Program Representative in June 2006; however, Tomas earned substandard evaluations as a Service Representative, and IDES considered the promotion to that position only a probationary promotion which could be taken away for failure to adequately perform. Tomas attributes her poor performance in the role of Service Representative to the inadequate training she received, which again, she alleges was the product of her supervisors' discrimination.

The demotion gave rise to the Second Charge of Discrimination. Tomas checked the national origin and retaliation boxes on her EEOC complaint, alleging that the discrimination took place from January 5, 2006—the date on which Tomas filed her First Charge of Discrimination—through the date of the charge, June 27, 2006. The allegations in the Second Charge were based on the discriminatory actions of Johnson and Voityna. Tomas also claims that AFSCME Local 1006 failed to represent her throughout her demotion and EEOC charge. Tomas asserts that Johnson discriminated against her throughout this period; however, Tomas believes that Johnson was too shrewd to communicate explicitly, either verbally or in writing, that discrimination motivated his actions. Tomas came to believe that national origin discrimination was motivating Voityna's actions when a coworker, Mr. Payne, explained the historical animosity between Poles and Ukrainians. Voityna never said anything to suggest that any discrimination or ill will was based on Tomas being Polish, but Tomas perceived that her Polish national origin motivated the discrimination from observing Voityna's body language.

Tomas asserts that, throughout her employment with IDES, supervisors gave African-American employees preferential treatment over employees of other races and national origins.

In addition to the factual contentions discussed above, Tomas alleges other facts, albeit without providing the dates of such occurrences. These include instances of Tomas' IDES supervisors: not giving proper recognition for her work and attempting to take credit for Tomas' work, resulting in Tomas receiving lower pay; denying her overtime work that other employees were not denied; and denying her time off work to attend a real estate closing. When Tomas called such practices into question, through EEOC charges and grievance actions, her supervisors reprimanded her and her working conditions deteriorated.

Tomas alleges that efforts to hold her employer and supervisors accountable for their actions fell upon deaf union ears. Tomas maintains that, because of their longstanding friendships with Johnson, each of the individual union officials neglected to pursue Tomas' claims. Tomas filed a Third Charge of Discrimination on December 4, 2006, alleging that the union, Ousley, Herron, and Fisher discriminated against her by (1) failing to represent her during her two prior charges of discrimination, (2) conducting improper investigations during her grievance proceedings, (3) covering up the IDES supervisors' discriminatory actions, (4) lying about transfer possibilities, and (5) ignoring her inquiries for assistance. Tomas asserts that, at different points throughout her struggles against IDES, each of the individual union officials was directly involved in her complaints and that each of the individuals discriminated against her through their actions.

Tomas no longer works at IDES. She left IDES voluntarily on November 29, 2007, after being denied the ability to transfer departments and the opportunity to pass exams that would allow her to transfer within IDES. Tomas began working for her present employer, the Illinois Department of Human Services, in Skokie, Illinois, on December 3, 2007.

**IV. ANALYSIS**

A. Intentional Infliction of Emotional Distress Against IDES

IDES argues that Count VI of Plaintiff's Consolidated IDES Complaint should be dismissed because the conduct Plaintiff alleges in her IIED claim was not extreme and outrageous. "In Illinois, a plaintiff must satisfy three requirements for a showing of intentional infliction of emotional distress: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress, and (3) the conduct must in fact cause severe emotional distress." *Lewis v. Sch. Dist. No. 70*, 523 F.3d 730, 746 (7th Cir. 2008) (citation omitted). Necessarily, though, "the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. at 746-47 (quoting *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)). As the Seventh Circuit explains:

> This standard is quite high. In order to meet the threshold for intentional infliction of emotional distress, the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community. Therefore, to serve as a basis for recovery, the defendant's conduct must be such that the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!

*Id*. at 747 (internal citations removed) (relying on the explanation of "Extreme and Outrageous Conduct" in RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

To determine whether the conduct alleged is extreme and outrageous, Illinois courts employ an "objective standard based on all the facts and circumstances of a particular case." *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994). "Employers often and necessarily take actions during the course of business that result in emotional distress, but those actions cannot be

classified as 'extreme and outrageous' unless they 'go well beyond the parameters of the typical workplace dispute.'" *Lewis*, 523 F.3d at 747 (quoting *Honaker*, 256 F.3d at 491). Further, "Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, 'if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (quoting *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000)).

Numerous of the events alleged in Ms. Tomas' complaint, even if true, simply do not rise to the level necessary to succeed on a claim of intentional infliction of emotional distress. *Cf. Patterson v. Xerox Corp.*, 901 F.Supp. 274, 279 (N.D.Ill. 1995) (supervisor's persistent harassment of a pregnant employee, including the berating of the employee for absence from work while she was hospitalized for premature labor, was extreme and outrageous); *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251 (Ill. App. Ct. 1990) (employer pressuring employee for dates, offering her money in return for sexual favors, and threatening to kill and rape her was extreme and outrageous). Some of the alleged occurrences reflect little more than common and inactionable workplace disputes. These include Johnson shaking his finger at Tomas and telling her to listen to him, Johnson issuing Tomas contradictory orders to leave and then return to his office, and supervisors shouting at Tomas for not working fast enough. Further, an employer's failure to train an employee or give the employee time off for a real estate closing is not extreme and outrageous conduct. *See Briggs v. North Shore Sanitary Dist.*, 914 F.Supp. 245, 252 (N.D. Ill. 1996) (dismissing IIED claim based on employer's failure to properly train employee); *Everly v. United Parcel Service*, No. 89-1712, 1989 WL 56877 (N.D. Ill. May 22, 1989) (dismissing

IIED claim based on employer's actions that included refusing employee time off to take care of her ailing mother and attend her brother's funeral even when employer's acts "might well be considered unfriendly, mean-spirited or even indecent").

Yet, Illinois courts have found extreme and outrageous behavior to exist in the employer/employee context when the employer "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker*, 256 F.3d at 491. In *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988), the Supreme Court of Illinois described non-exclusive factors that can inform the analysis of whether conduct is extreme and outrageous. Relevant here is the first *McGrath* factor, that "the degree of power or authority which a defendant has over a plaintiff can impact . . . whether that defendant's conduct is outrageous," and the "more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *Id*. at 809-10. In examining this factor, courts have noted that it is appropriate to consider not only the power and influence wielded by the harassing party, *Lopacich v. Falk*, 5 F.3d 210, 212 (7th Cir. 1993); *Milton v. Illinois Bell Tel. Co.*, 427 N.E.2d 829, 832 (Ill. App. Ct. 1981), but also the likelihood that the threatened action could be carried out, *Lopacich*, 5 F.3d at 212; *Plocar v. Dunkin' Donuts of Am., Inc.*, 431 N.E.2d 1175, 1180 (Ill. App. Ct. 1981).

Despite numerous inactionable factual allegations of extreme and outrageous conduct by IDES and her supervisors, Tomas has pleaded other actions that cannot be dismissed from her IIED claim as a matter of law. Taking her allegations as true, as I must when considering Defendants' Rule 12(b)(6) motion to dismiss, Plaintiff was interrogated repeatedly by her

supervisors; on one occasion, the interaction was so severe that Plaintiff was forced to seek immediate medical treatment for chest pains. The allegation of intentional infliction of emotional distress on these facts cannot be dismissed as a matter of law.

Further, Tomas alleges facts regarding document falsification that are similar to facts that overcame dismissal in *Milton v. Illinois Bell Tel. Co.*, 427 N.E.2d at 832. In *Milton*, the defendant employer allegedly engaged in an extensive course of disciplinary and harassing conduct to coerce the plaintiff to falsify work reports illegally. *Id.* The court granted the employer little leeway in its actions against the employee because the employer was pursuing an impermissible purpose. *Id.* at 832-33 ("An employer's interest in demanding that an employee falsify reports, and then retaliating against the employee for not cooperating, is simply not an interest which is entitled to legal deference."). Here, Tomas was subjected to threats and yelled at by her supervisors when she threatened to file grievances against them and when she refused to falsify training documents. "The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests. The result is something very like extortion." *Id.* at 832. To the extent that Plaintiff's supervisors held power over her and engaged in a course of disciplinary and harassing behavior against her for Plaintiff's attempts to file grievances and resist falsifying documents, Defendants' actions could be found extreme and outrageous. Accordingly, Defendants' motion to dismiss Plaintiff's IIED claim is denied to that extent and as to the facts relating to Plaintiff's incidence of chest pains, but granted otherwise.

B. Title VII and Section 1981 Claims Against AFSCME Defendants

AFSCME Defendants argue that Plaintiff's Title VII and § 1981 claims against the union defendants should be dismissed for failure to state a claim upon which relief can be granted. To

establish a Title VII claim against a union defendant, a plaintiff must show that: (1) the plaintiff's employer violated the collective bargaining agreement with respect to the plaintiff; (2) the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) some evidence indicates prohibited discriminatory animus motivated the union. *Greenslade v. Chicago Sun-Times*, 112 F.3d 853, 866 (7th Cir. 1997); *Trapaga v. Cent. States Joint Bd. Local 10*, No. 05-5742, 2007 WL 1017855, at *25 (N.D. Ill. Mar. 30, 2007). This standard applies similarly to § 1981 claims. *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) ("The same standards governing liability under Title VII apply to § 1981 claims.").

The first *Greenslade* element requires a plaintiff to show that the employer breached the collective bargaining agreement with respect to that plaintiff in particular. 112 F.3d at 866. Presumably, Plaintiff intends to argue that IDES breached the anti-discrimination clause through its numerous alleged acts of national origin discrimination, race discrimination, and retaliation. *See* Plaintiff's Response to Defendant's Motion of [sic] Dismiss, at 7; *see also* Tomas Deposition, at 202-03 (Plaintiff asserting that the state agency breached collective bargaining agreement with her). In *Greenslade*, the Seventh Circuit rejected the employee's argument that his claim of Title VII discrimination against his employer was sufficient to assert that the employer violated a general non-discrimination clause of the collective bargaining agreement. 112 F.3d at 866-67. However, the court reached that conclusion after finding that the employee's underlying Title VII claim against the employer was not viable on its merits. *Id.* at 867.

Here, in contrast, Tomas' Title VII claims against IDES remain undecided. In *Trapaga*, employees sought to satisfy the first *Greenslade* element by asserting that their employer's discrimination against them constituted a breach of their collective bargaining agreement with the employer. In that case, though, the employees did not bring a concomitant Title VII claim

14

against the employer. 2007 WL 1017855, at *25-26. Recognizing that there had been no similar determination that the *Trapaga* employer had not discriminated against the employees, the district court was "willing to assume," for the purposes of the union's motion to dismiss, that the employer breached the collective bargaining agreement. *Id*. at *26. Similarly here, because Tomas' Title VII claims against her employer are still viable and undecided, at this stage in the litigation I will accept Plaintiff's assertions that IDES violated the collective bargaining agreement in satisfaction of the first *Greenslade* element.

With regard to the second element, Defendants are correct in arguing that, because this action involves one by an Illinois State employee, the union's duty of fair representation is not governed by federal labor law but rather by state public sector labor law. *See Rodriguez v. Ramsey*, No. 03-3930, 2007 WL 141910, at *2 n.3 (N.D. Ill. Jan. 17, 2007). In order to show a breach of the duty of fair representation, an Illinois public employee must establish that a union's actions involved "intentional misconduct in representing employees." 5 ILCS 315/10(b)(1)(ii); *see also Murry v. Am. Fed'n of State, County and Mun. Employees, Local 1111*, 712 N.E.2d 874, 876 (Ill. App. Ct. 1999) ("[A] union cannot be said to have breached its duty of fair representation unless its actions are shown to have been 'intentional, invidious, and directed against an employee.'"). Plaintiff appears to argue that AFSCME allowed her employer's breach of the collective bargaining agreement to go unrepaired by failing to file and pursue grievances and by ineffectively conducting investigations into her complaints of discrimination against the IDES defendants. Plaintiff alleges that the union acted in this manner because the union officials were intentionally vindicating their friendship with Johnson, against whom Plaintiff attempted to complain. Recognizing Plaintiff's numerous allegations that union officials knowingly lied to her regarding grievance and transfer issues, and taking these allegations as true at this point in the

litigation, I cannot at this stage conclude as a matter of law that the union did not violate its duty of fair representation.

The third *Greenslade* element requires that some evidence indicates that discriminatory animus motivated the union. 112 F.3d at 866. Plaintiff's complaint asserts as fact that the union did not respond to her issues because she is a foreigner. AFSCME Complaint ¶ 13. Such evidence could indicate that discriminatory animus based upon Plaintiff's national origin motivated the union and reflects a sufficient pleading at this stage in the litigation.

Each of the above factual allegations must be accepted as true at this point in the litigation. Consequently, the AFSCME Defendants' motion to dismiss the Title VII and Section 1981 claims in their entirety is denied. Nonetheless, the breadth of these claims will be limited as explained below.

### 1. Individual Liability under Title VII

Individual AFSCME defendants Ousley, Herron, and Fisher argue that Plaintiff's Title VII claims should be dismissed because there is no individual liability under Title VII. Employers and labor organizations, defined as including agents of an employer or labor organization, may be sued under Title VII. 42 U.S.C. § 2000e(b) and (d). Seventh Circuit authority supports the absence of individual liability under Title VII. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995). Similarly, union officials acting as agents of the labor organization are not subject to individual liability under Title VII. *See Johnson v. Principi*, No. 03-1367, 2004 WL 2044258 (N.D. Ill. Sept. 3, 2004) (dismissing employee's Title VII claims against individual union official). Plaintiff cites *Gregory v. Southern New England Tel. Co.*, 896 F. Supp. 78, 82 (D. Conn. 1994), as standing for

the proposition that individual liability may exist under Title VII. Yet her citation of contrary persuasive authority is unavailing in the face of more recent and binding Seventh Circuit precedents. Accordingly, Defendants' motion to dismiss Plaintiff's Title VII claims against Ousley, Herron, and Fisher is granted.

### 2. Scope of Plaintiff's EEOC Charges

Defendant AFSCME argues that Plaintiff's Title VII race discrimination claim should be dismissed as outside the scope of her EEOC charge. As the Seventh Circuit explained:

> [B]ecause most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint. The test for determining whether an EEOC charge encompasses the claims in a complaint therefore grants the Title VII plaintiff significant leeway: all Title VII claims set forth in a complaint are cognizable that are "like or reasonably related to the allegations of the charge and growing out of such allegations."

*Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (internal citations omitted) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc), cert. denied, 429 U.S. 986 (1976)). The *Jenkins* test is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *Id*. Using this test, the *Cheek* court found that claims are not alike or reasonably related unless there is a factual relationship between them. *Id*. at 501; *see also Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (employing *Cheek*'s interpretation of the *Jenkins* test). "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id*.; *see, e.g.*, *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (finding that EEOC charge and district court complaint were not alike or reasonably related where

employee complained to the EEOC of only certain episodes of discrimination, and then sought judicial relief for different episodes of discrimination); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) (finding that claim of racial harassment was not preserved when EEOC charge pertained to earlier time period, only asserted discriminatory failure to promote, and referred to different employees).

Here, Plaintiff's EEOC charge against AFSCME, the Third Charge of Discrimination, asserts national origin discrimination and retaliation for the union's alleged failure to represent her with the grievances that gave rise to Plaintiff's charges of discrimination against her employer. The Third Charge of Discrimination against AFSCME does not include a charge of race discrimination. Although the discussion of particulars in the EEOC charge notes that one of Plaintiff's earlier charges against her employer asserted race discrimination, the concluding sentence of the EEOC charge against AFSCME reads, "I believe that I have been discriminated against because of my national origin, Polish, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended." The only mention of race discrimination in the charge against AFSCME relates to different conduct allegedly perpetrated by different individuals. Thus, Plaintiff's charge of race discrimination against AFSCME in her complaint is not reasonably related to the charges she asserted to the EEOC.

Further, to assert violations of Title VII of the Civil Rights Act, plaintiffs must exhaust the administrative remedies available to them before commencing a lawsuit. *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001); *Basith v. Cook County*, 241 F.3d 919, 931 (7th Cir. 2001). EEOC regulations allow an individual claiming to have been a victim of a labor organization's unlawful employment practice within the meaning of Title VII to file a formal charge with the Commission. 29 C.F.R. § 1601.7.; 42 U.S.C. § 2000e(d). The requirement that a complainant

file an EEOC charge of discrimination before commencing a lawsuit in federal court serves two purposes: (1) it provides notice of the complaint to the alleged violator of Title VII, *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992); and (2) it gives the EEOC an opportunity for conciliation, ultimately encouraging voluntary compliance with these federal mandates, *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989).

Plaintiff's response to AFSCME's argument for dismissal of the race discrimination claim further precludes her from making such a claim. Tomas' response demonstrates that she perceived the union's discrimination against her based on her race nearly seven months prior to filing the Third Charge of Discrimination but included the race discrimination claim for the first time in the complaint she filed in district court.[4] This action is contrary to the purposes served by the EEOC's administrative remedies. By doing so Tomas "violated the rule that allegations that are not included in an EEOC charge cannot be contained in a subsequent complaint filed in the district court." *See Kirk v. Federal Property Management Corp.*, 22 F.3d 135, 139 (7th Cir. 1994).

Accordingly, AFSCME's motion to dismiss Plaintiff's Title VII race discrimination claim is granted.

### 3. Temporal Scope of Plaintiff's Title VII Claims

Defendants argue that Plaintiff's Title VII claims should be dismissed as they relate to acts occurring more than 300 days prior to the filing of the Third Charge of Discrimination.

---

[4] Plaintiff responds to AFSCME's argument by writing: "Plaintiff added this charge when [she] filed [this] case in [the] Northern District court of Illinois based on realization of facts and how Mrs. Ousley[,] after meeting with [Plaintiff] and [Ousley's] friend James Johnson [on] June 16, 2006[,] conducted [an] investigation. She decided to have [a] group investigation and chose [Plaintiff's] two African American co-workers who were not sitting as close as other co-worker[s] to conduct [the] investigation. She did not want to investigate anybody, even though Plaintiff sent a list of co-workers. I Plaintiff added race issue when filled [sic] case in The United States District Court Northern District of Illinois on or about January 28, 2008."

Alternatively, Defendants argue that Plaintiff's Title VII claims should be dismissed as they relate to acts occurring outside of the dates alleged in the Third Charge of Discrimination.

Under Title VII, a plaintiff in Illinois must file an employment discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." § 2000e-5(e)(1); *see also AMTRAK v. Morgan*, 536 U.S. 101, 104-05 (2002); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *AMTRAK v. Morgan*, 536 U.S. at 110. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113. Tomas filed her EEOC charge against AFSCME on December 4, 2006. Accordingly, her claims are time-barred if they occurred before February 7, 2006. Tomas asserts numerous discrete instances in which her union failed to represent her as a result of national origin discrimination and retaliation. Some of these occurrences took place within the 300 days preceding December 4, 2006, while others did not. For instance, the union's failure to represent Tomas during her grievance concerning the alleged demotion occurred within the 300-day window. But the union's failure to represent Tomas during the events giving rise to the First Charge of Discrimination against IDES fall outside of the window. Indeed, the written discipline about which Tomas complains took place in May 2005, and Tomas filed the First Charge of Discrimination on January 5, 2006. The period for the time bar begins to run when the employee knows she has been injured. *Stepney*, 392 F.3d at 240. In this instance, Tomas asserted her rights for the alleged injury against IDES by filing the charge of discrimination but neglected to do so against AFSCME for failing to represent her. Accordingly, Plaintiff may not

impose liability against AFSCME for its allegedly discriminatory actions preceding the 300-day period; however, Plaintiff may use evidence regarding the untimely filed acts as background evidence in support of her timely claims occurring after February 7, 2006. *See Morgan*, 536 U.S. at 113 ("The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

C. Section 1983 Claims Against AFSCME Defendants

AFSCME Defendants argue that Plaintiff's § 1983 claims against the union defendants should be dismissed for failure to state a claim upon which relief can be granted. To withstand Defendants' motion to dismiss, Plaintiff's complaint must allege facts establishing that AFSCME and its individual officials were acting under color of state law when they failed to represent Tomas. *See* 42 U.S.C. § 1983. As a private entity, a union is generally not a state actor and therefore does not act under color of state law. *Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998). Nevertheless, a union or other private entity may be held liable under § 1983 by conspiring with the state to deny a plaintiff his or her rights, *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir. 1999), or by acting as "a willful participant in joint action with the State or its agents." *Leahy v. Bd. of Trustees of Community College District No. 508, County of Cook*, 912 F.2d 917, 921 (7th Cir. 1990) (accord *Dennis v. Sparks*, 449 U.S. 24, 27 (1990)).

Although Defendant is correct that, "[a] bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983," *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir. 1999) (quoting *Messman*, 133 F.3d at 1045), Plaintiff

alleges facts that preclude dismissal at this stage, *see*, *e.g.*, *Collins v. Illinois*, No. 03-3159, 2006 WL 213947, at *8 (C.D. Ill. Jan. 27, 2006) (denying motion to dismiss § 1983 claim against union amid plaintiff's allegation of "collusion" between state defendants and union defendants). Plaintiff asserts that the union covered up discrimination and conducted "phony" investigations as consequence of Ousley's friendship with and influence from Johnson. These allegations must be accepted as true. Consequently, the Court is unable at this stage to dismiss the § 1983 claims against the AFSCME Defendants.

## D. Statute of Limitations on Section 1981 and Section 1983 Claims

AFSCME Defendants argue that Plaintiff's §§ 1981 and 1983 claims preceding January 28, 2006, should be dismissed for lack of subject matter jurisdiction, asserting that they fall outside of the applicable statute of limitations. Section 1981 claims are subject to a four-year statute of limitations, and § 1983 claims are subject to a two-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-84 (2004) (§ 1981); *Licari v. City of Chicago*, 298 F.3d 664, 667-668 (7th Cir. 2002) (§ 1983); *Brumfield v. City of Chi.*, No. 08-2024, 2008 WL 4181739, at *2 (N.D. Ill. Sept. 4, 2008) (§ 1981 and § 1983). Plaintiff filed her AFSCME Complaint on January 28, 2008. To the extent that Plaintiff alleges acts of discrimination under § 1981 that occurred before January 28, 2004, those allegations are dismissed. To the extent that Plaintiff alleges acts of discrimination under § 1983 that occurred before January 28, 2006, those too are dismissed.

## E. Individual Liability for Union Officials

AFSCME Defendants argue that Plaintiff's §§ 1981 and 1983 claims against the individual union officials Ousley, Herron, and Fisher should be dismissed because union officials are immune from individual liability. To establish individual liability for §§ 1981 and 1983

claims, "Plaintiff must . . . allege that each Defendant was personally involved in the acts of discrimination. . . . Each Defendant either must have directly participated in the wrongful conduct or allowed the conduct to occur with his or her knowledge and consent." *Frazier v. Harris*, 266 F.Supp. 2d 853, 869 (C.D.Ill. 2003). This analysis applies to individual union defendants. *See Cardenas v. Aramark Facility Servs.*, No. 05-6462, 2006 WL 1344057, at *2 (N.D. Ill. May 11, 2006) (finding that allegations of individual union defendants failed to vigorously pursue a grievance on plaintiff's behalf was a sufficient allegation of personal involvement to survive those defendants' motion to dismiss). Here, Plaintiff alleges that each of the three individual union defendants was personally involved in discriminating against her by failing to represent her in her complaints against IDES. These allegations satisfy Plaintiff's pleading requirements against the individual union defendants. Therefore, Defendants' motion is denied as it relates to individual liability under §§ 1981 and 1983.

## V. CONCLUSION

For the reasons stated herein, Defendants' Motions to Dismiss are granted in part and denied in part. Most of Plaintiff's claims against IDES and IDES employees survive as they were drafted in the Consolidated IDES Complaint. Yet Plaintiff's claim of intentional infliction of emotional distress against IDES and the IDES employees shall be limited in scope to the following occurrences: (1) the alleged interrogation by supervisors that resulted in Tomas seeking immediate medical treatment for chest pains; and (2) the alleged threatening and harassing treatment from supervisors in efforts to compel Tomas to falsify documents or to prevent Tomas from filing grievances against her supervisors.

With regard to Plaintiff's various discrimination and retaliation claims against AFSCME and AFSCME individuals, the scope of those claims shall be so limited: (1) the individual

AFSCME officials, Ousley, Herron, and Fisher, are excused from individual liability under the Title VII claims; (2) Plaintiff's race discrimination claim is dismissed as outside the scope of Plaintiff's EEOC charge; (3) Plaintiff's Title VII claims for acts occurring prior to February 7, 2006 are dismissed as being beyond the 300-day scope permitted by Plaintiff's charge of discrimination against AFSCME; (4) Plaintiff's § 1981 claims for acts occurring prior to January 28, 2004 are dismissed as falling outside the statute of limitations; (5) Plaintiff's § 1983 claims for acts occurring prior to January 28, 2006, are dismissed as falling outside the statute of limitations. Plaintiff's claims against AFSCME and the individual AFSCME officials under Title VII and §§ 1981 and 1983 survive otherwise.

ENTER:

James B. Zagel
United States District Judge

DATE: November 13, 2008